```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
                            AT LOUISVILLE
```

UNITED STATES OF AMERICA                                          PLAINTIFF


v.                                        CRIMINAL ACTION NO. 3:16-CR-98-DJH


ANDRES TOMAS ALVAREZ HERNANDEZ                                    DEFENDANT

**RESPONSE TO MOTION TO DISMISS**
**AGGRAVATED IDENTITY THEFT COUNTS FROM THE INDICTMENT**

**ELECTRONICALLY FILED**

The grand jury charged Andres Tomas Alavarez Hernandez with violating 18 U.S.C. § 1028A after the FBI caught him stealing people's credit card information using skimming devices on gas pumps. He thus transferred and possessed, without authority, the means of identification of another person, satisfying Section 1028A's elements. This Court should deny Hernandez's motion to dismiss because his claim that his conduct does not violate the statute is wrong and unsupported by any persuasive legal authority.  (DN 44, Defendant's Brief).

**FACTS**

From May 2015 to April 2016, FBI and store surveillance video shows Hernandez and his cohort, Pabel Anguela-Vazquez, working together to covertly install skimming devices inside various gas station pumps. (R. 27 Pretrial Memorandum at 67-68). These devices are designed to intercept credit and debit cards

when unsuspecting individuals purchase gas at the pump. (*Id.* at 67). Video also shows Hernandez and Anguela-Vazquez attempting to retrieve the devices that the FBI had already recovered. (*Id.* at 68). At some gas pumps, Hernandez provided a distraction by standing in front or behind the door of their car to obscure the view while Anguela-Vazquez accessed the inside of the pump to retrieve the skimming devices. (*Id.*). Other instances include: Anguela-Vazquez on surveillance video arriving at a gas station in a silver Ford Edge registered to Hernandez; multiple occasions of Hernandez and Anguela-Vazquez on video arriving at a gas station in a white van and installing a skimming device on a pump; and Hernandez and Anguela-Vazquez arriving in the same white van at gas stations and attempting to recover skimming devices. (*Id.* at 68-69). In total, the skimming devices collected approximately 186 credit cards. (*Id.*).

A grand jury sitting in Louisville, Kentucky indicted Hernandez on six counts of wire fraud and twenty-one counts of aggravated identity theft for installing six credit and debit card skimming devices at six gas pumps located at various gas stations throughout Louisville, Kentucky and Prospect, Kentucky. (R. 1 Indictment 1-6).

Hernandez moves to dismiss the aggravated identity theft counts from the Indictment. (DN 44, Defendant's Brief at 112). Hernandez argues that the aggravated identity theft counts

2

should be dismissed because the FBI recovered the skimming devices before he and Vazquez could recover the credit and debit card information that was stolen and transferred to the skimming devices. (*Id.* at 113). Hernandez claims that his conduct does not amount to an aggravated identity theft charge because he never "knowingly transfer[ed], possess[ed], and use[d]" the credit and debit card information obtained through the skimming devices. (*Id.*). Hernandez does not, however, contest the fact that 186 credit cards information was transferred to the skimming devices that he and Anguela-Vazquez installed.

## ARGUMENT

**I. FBI and store surveillance identified Hernandez installing and attempting to retrieve several skimming devices; Hernandez transferred numerous individuals' means of identification to the devices; Hernandez also constructively possessed the information because he had both the power and the intention at any given time to exercise dominion over the information in the skimming devices; Hernandez violated 18 U.S.C. 1028A(a)(1) and the aggravated identity theft charge should not be dismissed.**

Hernandez's argument that he never "transfer[red], possess[ed], and use[d]" the credit and debit card information is misplaced. (R. 44 Motion at 144). Hernandez's argument misses a key distinction in the statute, namely that a defendant can be found guilty by satisfying only one of three means of satisfying the element:

> (1)in general.--Whoever, during and in relation to any felony violation enumerated in subsection (c), ***knowingly transfers, possesses, <u>or</u> uses***, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A(a)(1)(emphasis added).

In his motion, Hernandez mistakenly substitutes "**and**" for "**or**" in the statute. (R. 44 Motion at 113). Presumably, Hernandez is relying on the Indictment, which says Hernandez "did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, names and credit and debit card numbers." (R. 1 Indictment 3). Hernandez argues that the Indictment was written in the conjunctive rather than the disjunctive and that he was charged with transferring, possessing, **"and"** using the individuals' means of identification. (R. 44 Motion at 113). The Sixth Circuit, however, has said, "It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively." *United States v. Murph*, 707 F. 2d 895, 897 (6th Cir. 1983). This means Hernandez did not have to satisfy all the different means of committing the crime to be charged. He only had to satisfy one of the following means: transfer, possess, **"or"** use, which he did.

4

> **A. Hernandez violated 18 U.S.C. 1028A(a)(1) by installing skimming devices that intercepted and transferred individuals' credit and debit card information when purchasing gas at gas station pumps.**

The facts recited in the Indictment and the Pretrial Memorandum support a charge of aggravated identity theft because the credit and debit card information was transferred from the cards to the skimming devices that were installed by Hernandez and Anguela-Vazquez. A defendant can be found guilty if he or she "knowingly transfers . . . , without lawful authority, a means of identification of another." 18 U.S.C. § 1028A(a)(1). "The term 'transfer' includes selecting an [identification document] and placing or directing the placement of such document on an online location where it is available to others." 6th Cir. Pattern Jury Instr. Crim. 15.04(2)(B)(i). *United States v. White*, 296 F. App'x 483, 485 (6th Cir. 2008) (unpublished) (co-defendant was found guilty of identity theft for transferring between 50 and 100 credit card accounts to defendant via cell phone).

After Hernandez and Anguela-Vazquez placed the skimming devices inside the gas pumps, each victim's credit and debit card information was "processed through gas pumps that caused communications from gas stations in Kentucky to processing centers in Texas . . ." (R. 1 Indictment at 2). One skimming device had approximately ninety-two credit card numbers and

5

names. (R. 27 Pretrial Memorandum at 68). Another device had sixty-three. (*Id.* at 69). In total, the six recovered skimming devices collected approximately 186 credit card numbers and names of individuals. (*Id.* at 68).

### B. Hernandez violated 18 U.S.C. 1028A(a)(1) by constructively possessing each individual's credit and debit card information located in the skimming devices.

It is a well established legal principle that possession includes both actual possession and constructive possession: "The law recognizes two kinds of possession—actual possession and constructive possession. Either one of these, if proved by the government, is enough to convict." 6th Cir. Pattern Jury Instr. Crim. 2.10(1)(2016). The Sixth Circuit Jury Instructions make the distinction between actual and constructive possession:

> (2) To establish actual possession, the government must prove that the defendant had direct, physical control over the _____, and knew that he had control of it.
>
> (3) To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the _____, and knew that he had this right, and that he intended to exercise physical control over _____ at some time, either directly or through other persons.

6th Cir. Pattern Jury Instr. Crim. 2.10(2)-(3); 1A Fed. Jury Prac. & Instr. § 16:05 (6th ed.)(as opposed to "actual possession," constructive possession is satisfied if "a person . . . knowingly has both the power and the intention at a given

6

time to exercise dominion or control over a thing, either directly or through another person or persons"); *Nat'l Safe Deposit Co. v. Stead*, 232 U.S. 58, 67 (1914)("both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins").

The Sixth Circuit has long held that a defendant can be convicted of a possessory offense based on constructive possession. *See, e.g., United States v. Craven*, 478 F. 2d 1329, 1333 (6th Cir. 1973); *United States v. Wolfenbarger*, 426 F. 2d 992, 994-95 (6th Cir. 1970); *United States v. Burch*, 313 F. 2d 628, 629 (6th Cir. 1963). In *Craven*, the Sixth Circuit outlined the general principles governing constructive possession as follows:

> Possession may be either actual or constructive and it need not be exclusive but may be joint [citations omitted]. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.

478 F.2d at 1333. In more recent case law, *Craven* has been consistently referenced to define constructive possession. *See*

7

*United States v. Bailey*, 553 F. 3d 940, 944 (6th Cir. 2009; *United States v. Reed*, 141 F. 3d 644, 651 (6th Cir. 1998).

In order to be guilty of receiving stolen property, including stolen means of identification, a defendant need not have actual, physical possession of the property or information. To satisfy the possession element of the crime, "it is sufficient if the defendant have some dominion or control over the property so that he may be said to have 'constructive' possession of it." Carol J. Miller, *What Constitutes "Constructive" Possession Of Stolen Property To Establish Requisite Element Of Possession Supporting Offense Of Receiving Stolen Property*, 30 A.L.R.4th 488(1984). Constructive possession includes instances where the defendant has never touched or even seen the stolen property. *Id*. When the stolen property is found on premises belonging to another, a defendant may still be found guilty "if there is evidence that the defendant directed the property to be placed there, or that he requested the owner of the premises to handle or store the goods for him, or that he had access to the area and knew that the stolen goods were there." *Id.*

The Second Circuit has defined constructive possession as "such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the

defendant's dominion and control as if it were actual possession." *United States v. Casalinuovo*, 350 F.2d 207, 209 (2d Cir. 1965). Other Circuits are in agreement on the concept of constructive possession. *United States v. Dugan*, 477 F.2d 140, 141 (8th Cir. 1973) (defendant was determined to be in possession of stolen coats because he exercised dominion and control over them and had access to the coats even though they were in the home of another individual); *United States v. Anderson*, 552 F.2d 1296, 1301 (8th Cir. 1977) (court found that defendant's directive role in the planning and execution of the delivery of stolen merchandise was enough for a finding of constructive possession); *Hale v. United States*, 410 F.2d 147, 150 (5th Cir. 1969)(among other factors, appellant's prescense at the location of the stolen automobile provided the jury with evidence "to justify a conclusion that the appellant was in constructive possession of the automobile").

Facts recited in the Indictment and the Pretrial Memorandum support Hernandez's charges of aggravated identity theft because he constructively possessed and transferred the credit and debit card information stored on the skimming devices placed at the gas pumps. On multiple occasions, FBI surveillance video and store surveillance video show Hernandez and Anguela-Vazquez attempting to retrieve the devices, even though the FBI had already recovered them. (R. 27 Pretrial Memorandum at 68). It is

9

no consequence that Hernandez and Anguela-Vazquez could not retrieve the skimming devices, because the crime of aggravated identity theft had already been committed. (*Id.*). Although the stolen credit and debit card information was located on skimming devices at gas stations, Hernandez and Anguela-Vazquez had constructive possession of the stolen information. The fact that Hernandez and Anguela-Vazquez returned to retrieve the skimming devices at each gas pump shows that they believed the stolen identifications could be found on the skimmers they installed.

    Hernandez and Anguela-Vazquez exercised dominion and control over the information by installing the skimming devices and returning to the gas stations to retrieve them. On one occasion, June 24, 2015, surveillance video shows Anguela-Vazquez opening a pump at 10:08 p.m. (*Id.*). On August 18, 2016, surveillance video shows a white van and two individuals believed to be the defendants installing a skimming device on a gas pump. (*Id.* at 69). On another occasion, October 6, 2016, a white van is shown on video pulling up to two gas pumps to install skimming devices. Two days later, October 8, 2016, video shows Hernandez and Anguela-Vazquez return again in the white van. Hernandez obstructed the view while Anguela-Vazguez attempted to retrieve the device. (*Id.*).

On several occasions, surveillance video shows the defendants returning to gas stations to recover the devices that already been retrieved by the FBI. (*Id.* at 68). This leads to the conclusion that Hernandez and Anguela-Vazquez directed the skimming devices to be placed at the pumps, knew the devices were at the pumps, and had access to the information on the devices.

Another critical piece of evidence is surveillance video from June 12, 2015, showing Anguela-Vazquez getting out of a silver Ford Edge registered to Hernandez. (*Id.*). This shows that Hernandez facilitated Anguela-Vazquez's entry into the venture, adding more weight to the constructive possession argument. Because there is such a strong nexus between Hernandez and the stolen information it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession. The facts in this case clearly show that Hernandez was properly charged with twenty-one counts of aggravated identity theft.

## CONCLUSION

Based on the above law and arguments, this Court should deny Hernandez's motion to dismiss the aggravated identity theft charges.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

s/Daniel P. Kinnicutt

Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
PH:  (502)625-7408
FAX: (502)582-5067
Email:Daniel.Kinnicutt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the Defendant's attorney

 s/Daniel P. Kinnicutt

Assistant U.S. Attorney