UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                                        CRIMINAL ACTION NO. CR 3:16-CR-98-DJH

PABEL ANGUELA-VAZQUEZ
ANDRES TOMAS ALVAREZ HERNANDEZ                          DEFENDANTS

**UNITED STATES PRETRIAL MEMORANDUM
ELECTRONICALLY FILED**

The United States, by counsel, Assistant United States Attorney, Joshua Judd, files its pretrial memorandum for the trial date currently set for July 17, 2017, in Louisville, Kentucky. The anticipated length of trial is four days. The United States Grand Jury issued an indictment on August 17, 2016, charging Wire Fraud and Aggravated Identity Theft for credit card skimming in Louisville, Kentucky.

A. **STATUTES AND ELEMENTS OF THE OFFENSES**

**Wire Fraud (18 U.S.C. § 1343)**
1. Defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises (or willfully participated in such a scheme with knowledge of its fraudulent nature)
2. The defendant acted with the intent to defraud
3. The defendant, in advancing, furthering, or carrying out the scheme, (name) transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

Penalty: 20 years, $250,000, NM 3 yrs SR.

**Aggravated Identity Theft (18 U.S.C. § 1028A )**
1. Knowingly transferred, possessed, or used
2. Without lawful authority
3. Means of identification of another person
4. During and in relation to a felony enumerated in § 1028A(c) or § 2332b(g)(5)(B).  This includes mail, bank, and wire fraud.  It says it includes any crime related to fraud and false statements which should include 18 U.S.C. 1029 and 1028 (except 1028(a)(7)).

The government must prove that the defendant knew the particular numbers (or identifiers) belonged to another individual.

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any -
(A) name, social security number, date of birth, official State or government
issued driver's license or identification number, alien registration number,
government passport number, employer or taxpayer identification number;
(B) unique biometric data, such as fingerprint, voice print, retina or iris image,
or other unique physical representation;
(C) unique electronic identification number, address, or routing code; or
(D) telecommunication identifying information or ***access device***.

"***Access device***" means any card, plate, code, account number, electronic serial number, mobile identification number, ***personal identification number*** or other telecommunications service, equipment, or instrument identifier, ***or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds*** (other than a transfer originated solely by paper instrument).

"Without lawful authority" means without a form of authorization recognized by law.

Penalty:  2 years consecutive

B. **STATEMENT OF FACTS**

Defendants Pabel Anguela-Vazquez and Andres Tomas Alvarez Hernandez executed a scheme and artifice to steal debit and credit card numbers at gas stations at various locations using devices placed in gas in pumps known as skimmers.  Skimming devices intercept and transfer debit and credit card information from an unsuspecting purchaser of gas at the pump using the credit card reader at the gas pump.  Once a card is swiped the skimming device intercepts and transfers

2

credit and debit card information from the transaction to an electronic storage device clandestinely placed inside a gas pump by defendant's like Hernandez and Anguela-Vazquez. As customers purchase gas at the pumps, the skimming device harvests credit and debit card numbers and stores the numbers until the individuals possessing the device return to retrieve it or have others retrieve the devices on their behalf. The skimming devices are installed internally inside the pump and are undetectable unless the inside of the pump is accessed. The skimming devices also do not interfere with the purchase of gas.

    Defendants Anguela-Vazquez and Hernandez worked individually, with others, and as a team to install and retrieve skimming devices inside gas pumps. In each instance charged, the FBI recovered the skimming devices and used store surveillance video and FBI surveillance video to identify the defendants at the location of the skimming devices. In some instances, Hernandez provided a distraction by standing in front or behind of the door to a vehicle to obscure the view while Anguela-Vazquez accessed the inside of the pump to retrieve the skimming device. In some instances, such as Skimmer B and Skimmer F, Anguela-Vazquez is captured on surveillance video inside a gas pump trying to locate his skimming device that had already been taken by the FBI. Anguela-Vazquez and Hernandez also used stolen credit card information to make illegal purchases at Kroger and Meijer. The 6 recovered skimming devices collected approximately 186 debit and credit card numbers and names of individuals. By so doing, Hernandez and Anguela-Vazquez committed aggravated identity theft in addition to the wire fraud.

    The FBI retrieved the devices. Anguela-Vazquez and Hernandez installed, assisted in the installation, or attempted retrieve the following devices on the following dates:

```
6/12/2015 to 6/13/2015   Skimming device A, HWY US 42, Prospect, KY
6/24/2015 to 6/25/2015   Skimming device B, HWY US 42, Prospect, KY
8/16/2015 to 8/18/2015   Skimming device C, Wattbourne Lane, Louisville, KY
10/6/2015 to 10/7/2015   Skimming device D, Shelbyville Road, Louisville, KY
```

10/6/2015 to 10/7/2015   Skimming device E, Shelbyville Road, Louisville, KY
4/13/2016 to 4/14/2015   Skimming device F, HWY US 42, Prospect, KY

Skimmer A:  On June 12, 2015 the FBI recovered Skimmer A from a gas station located on HWY 42.  A clerk at the station recovered the device and gave it to the FBI.  On June 12, 2015, about 9:30 p.m., surveillance video shows an individual believed to be Pabel Anguela-Vazquez get out of a silver Ford Edge registered to Andres Alvarez Hernandez.  The video shows Hernandez providing a distraction while the skimming device is installed.  The skimmer was analyzed and had a pin number of 8563 and had approximately 92 credit card numbers and names.

Skimmer B:   On June 25, 2015, FBI recovered Skimmer B from a gas station clerk at a gas station on Highway 42.  The FBI reviewed the surveillance footage from the store and identified a Black Escalade arrive and defendant Pabel Aguela-Vazquez exit the vehicle and presumably install a credit card skimming device.  The video shows Defendant Anguela-Vazquez open pump number 4 at 10:08 p.m. on June 24, 2015.  The next day the FBI retrieved the device.  On June 28, surveillance video shows Defendant Vazquez opening pump number 4, reach inside the pump access door, and handle several cables looking for a skimming device that the FBI had already taken.  The device had intercepted approximately 40 credit cards numbers and names.

Skimmer C:   On August 16, 2015, a White Van used to by Andres Tomas Alvarez Hernandez is seen at the pump with the hood opened at a gas station on Watterbourne Lane.  Alvarez is identified wearing orange shorts.  Hernandez used the same decoy tactics:  opening the hood or standing with the driver's side door as he blocks the view of the station clerks.  Two days later, on August 18, 2016, the FBI recovered Skimmer C from a gas station on Wattbourne Lane in Louisville, KY. The device had not names or credit card numbers on it at the time the FBI recovered it.

On or about October 1, 2015, Pabel Anguela-Vazquez used S.W.'s credit/debit card information without authorization to make purchases at Kroger located at 4211 South 3rd Street, Louisville, Kentucky, for $103.76 and $101.16.

Skimmers D and E: On October 6, 2016, a white van pulled up to gas pumps 3 and 4 to install skimming devices in each pump around 9:15 p.m. at a gas station on Shelbyville RD. A white van pulls up to pump 3 on video and seconds later it pulls up to pump 4. During that time, a woman enters the store both times. The FBI subsequently recovered Skimmers D and E from pumps 3 and 4, respectively. On October 8, 2016, surveillance video from the store shows a white van arrive at the same pumps. The video shows Anguela-Vazquez and Hernandez. You can also see a door to pump 3 open. They go to pump 4 and open doors to van to block view. Hernandez stands by the door so as to obstruct the view from inside the store. Hernandez was the passenger. At the time the FBI recovered the devices, skimmer D had nine credit card numbers and names on it, and skimmer E did not capture any numbers.

On or about October 25, 2015, Andres Tomas Alvarez Hernandez used A.L.'s credit/debit card information without authorization to make a purchase of a prepaid MasterCard credit card at Meijer in Jeffersonville, Indiana, for $206.95. Hernandez conducted five credit card transactions using five different credit cards, and purchased five prepaid MasterCard credit cards at Meijer on October 25, 2015.

Skimmer F: On April 14, 2016, the FBI recovered Skimmer F from a gas station on HWY 42. Store surveillance video from earlier that same day shows Defendants Anguela-Vazquez and Hernandez installing Skimmer F around 8:32 p.m. On April 16, 2016, surveillance video shows both defendants arrive in a white van. Both defendants are easily identified on the video. Anguela-Vazquez can be seen attempting to retrieve the skimming device while Hernandez stands between

Anguela-Vazquez and store. Both men enter the vehicle and leave the area. Skimmer F had 63 credit cards and names on it.

### A. SUBSTANTIVE ISSUES OF LAW AND EVIDENTIARY ISSUES

The defendants' have filed a motion to dismiss that has been briefed by the parties.

### B. POTENTIAL TRIAL PROBLEMS

None anticipated at this time.

### C. PROPOSED JURY INSTRUCTIONS

#### Wire Fraud (18 U.S.C. § 1343)

Counts 1 through 6 of the indictment charge the defendant with wire fraud. For you to find the defendant guilty of wire fraud, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First, that the defendant knowingly participated in, devised, intended to devise a scheme to defraud banks, credit and debit card companies, and individuals, to obtain money and property;

Second, that the scheme included a material misrepresentation or concealment of a material fact;

Third, that the defendant had the intent to defraud; and

Fourth, that the defendant used wire communications or caused another to use wire communications in interstate commerce in furtherance of the scheme.

Now I will give you more detailed instructions on some of these terms.

A "scheme to defraud" includes any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.

The term "false or fraudulent pretenses, representations or promises" means any false statements or assertions that concern a material aspect of the matter in question, that were either known to be untrue when made or made with reckless indifference to their truth. They include actual, direct false statements as well as half-truths and the knowing concealment of material facts.

An act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or some other innocent reason.

A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension.

To act with "intent to defraud" means to act with intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself.

To "cause" wire, radio or television communications to be used is to do an act with knowledge that the use of the communications will follow in the ordinary course of business or where such use can reasonably be foreseen.

The term "interstate commerce" includes wire, radio or television communications which crossed a state line.

It is not necessary that the government prove all of the details alleged concerning the precise nature and purpose of the scheme or that the material transmitted by wire communications was itself false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone or that the use of the wire communications was intended as the specific or exclusive means of accomplishing the alleged fraud or that someone relied on the misrepresentation or false statement or that the defendant obtained money or property for his own benefit.

If you are convinced that the government has proved all of the elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of the elements, then you must find the defendant not guilty of this charge.

**Authority**: Pattern Crim. Jury Instr. 6th Cir. 10.02

### Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1))

Counts 7 through 34 of the indictment charge the defendants with violating federal law by *transferring, possessing, or using* a means of identification of another person during and in relation to a felony violation listed in the statute.

For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

First: That the defendants committed the felony violation charged in Count 1 through 6 . The violation charged in Counts 1 through 6 is a felony violation listed in the statute.

Second: That the defendant knowingly *transferred, possessed, or used* a means of identification of another person without lawful authority.

Third: That the defendant knew the means of identification belonged to another person.

Fourth: That the transfer, possession, or use was during and in relation to the crime charged in Counts 1 through 6.

Now I will give you more detailed instructions on some of these terms.

The term "means of identification" is defined as any name or number that may be used to identify a specific individual, including any name, routing code, or access device. "Access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or

in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

The term "*transfer, possess, or use*" is defined as follows:

The term "transfer" includes *moving* a *means of identification and or causing the movement of that means of identification to another location* where it is available to others.

The term "possession" means—actual possession or constructive possession. Either one of these, if proved by the government, is enough to convict. To establish actual possession, the government must prove that the defendant had direct, physical control over the means of identification, and knew that he had control of it. To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the means of identification, and knew that he had this right, and that he intended to exercise physical control over the means of identification at some time, either directly or through other persons.

For example, if you left something with a friend intending to come back later and pick it up, or intending to send someone else to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend. But understand that just being present where something is located does not equal possession. The government must prove that the defendant had actual or constructive possession of the means of identification, and knew that he did, for you to find him guilty of this crime. This, of course, is all for you to decide.

The term "use" means active employment of the means of identification during and in relation to the crime charged in Counts 1 through 6. "Active employment" includes activities such as displaying or bartering. "Use" also includes a person's reference to a means of

identification in his possession for the purpose of helping to commit the crime charged in Counts 1 through 6.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. *The government is not required to prove that the defendant knew that his actions violated any particular provision of law, or even knew that his actions violated the law at all. Ignorance of the law is not a defense to this crime.*

The phrase "without lawful authority" does not require that the defendant stole the means of identification information from another person but includes the defendant obtaining that information from another person with that person's permission or consent.

The term "during and in relation to" requires that the means of identification have some purpose or effect with respect to the crime charged in Counts 1 through 6 ; in other words, the means of identification must facilitate or further, or have the potential of facilitating or furthering the crime charged in Count , and its presence or involvement cannot be the result of accident or coincidence.

 If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

**Authority:**  Pattern Crim. Jury Instr. 6th Cir. 15.04 and 2.10 (2013 ed.);
Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases,
District of South Carolina* § 1028A (Emily Deck Harrill, ed., 2015 Online Edition).

## **Aiding and Abetting**

For you to find guilty of Wire Fraud and Aggravated Identity Theft, it is not necessary for you to find that he personally committed the crime. You may also find him guilty if he

intentionally helped *or encouraged* someone else to commit the crime. A person who does this is called an aider and abettor.

But for you to find guilty of as an aider and abettor, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A) First, that the crime of was committed.

(B) Second, that the defendant helped to commit the crime or encouraged someone else to commit the crime.

(C) And third, that the defendant intended to help commit *or encourage* the crime.

Proof that the defendant may have known about the crime, even if he was there when it was committed, is not enough for you to find him guilty. You can consider this in deciding whether the government has proved that he was an aider and abettor, but without more it is not enough.

What the government must prove is that the defendant did something to help *or encourage* the crime with the intent that the crime be committed.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you cannot find the defendant guilty of as an aider and abettor.

**Authority**: Pattern Crim. Jury Instr. 6th Cir. 4.01 (2013 ed.), Pattern Crim. Jury Instr. 6th Cir. 4.01 (2013 ed.)

D. **PROPOSED VOIR DIRE**

1. This case was investigated by the FBI, Louisville Metro Police Department, and Clark County Indiana Sheriff's Office. Has anyone had any contact, one way or another, good or bad,

with this or any other law enforcement agency?  Has anyone had their credit card stolen that they know of?

2.      There will be local law enforcement and federal agents testifying in this case. Has anyone had a really good or bad experience with the United States Attorney's office, a police officer, or federal agent-even something like getting a traffic ticket you did not think you deserved-that you think would affect your ability to listen to their testimony and give it the same weight as any other witness?

3.      Has anyone served in law enforcement in their community or elsewhere?  Family members?

4.      Have any of you ever been the victim of crime, or do you have a friend or family member who has been the victim crime?  Has anyone had an elderly loved one be the victim of theft by a domestic worker or senior health care provider?

5.      You will likely hear testimony from several witnesses who government employees.  Can you fairly evaluate the credibility of government witnesses by considering all available evidence in determining if those witnesses are truthful in their testimony?

6.      At the end of the case the Court will instruct you on the elements of each offense.  Those are the facts that the government must prove to you beyond a reasonable doubt.  That is their burden.  Will any of you hold the government to a different burden based on your expectations or require the government to prove to you something that is not in the instructions.  In other words, can you convict someone if the government has proven all the elements of the crime, but has not proven something else that you may be wondering about?

7.      Do all of you understand that you must set aside any personal feelings you may have about what the law ought to be if they conflict with the law contained in the Court's instructions?

Is there anyone who thinks that they will not be able to follow the law that the Court gives you in the instructions?

8. Are any of you employed by a law enforcement agency, or do you have friends or family members employed by law enforcement agencies?

9. Have you or a close friend or family member ever been arrested or charged with a crime?

10. Have you or a close friend or family member ever testified for a defendant in a criminal trial?

11. Have you or a close friend or family member ever served time in a jail or prison?

12. Have any of you ever served on a jury before?

13. If you have served on a jury before, was it a civil or criminal case?

14. If you have served on a criminal jury before, did you deliberate and reach a verdict in the case?

15. If you did deliberate and reach a verdict, what was the verdict in the case?

16. If you served on either a criminal or civil jury before, did you serve as the foreperson?

17. If you served on either a criminal or civil jury before, is there anything about that experience that would prevent you from listening to the evidence in this case and bringing back a verdict based only on the evidence?

18. Do you understand that in federal court, the punishment a defendant receives, if any, is to be imposed by the Court and your verdict must in no way be affected by your concern for what punishment would be proper?

19. Do you understand that the duty of the Government is to prove guilt to the exclusion of a reasonable doubt, but the government is not required to prove guilt beyond all possible doubt?

20. Do you understand that a defendant on trial is entitled to a presumption of innocence however, as with all presumptions, it may be overcome by competent evidence?

21. Do you understand the law makes no difference between direct and circumstantial evidence and the weight to be given to it; that the burden is one of proof beyond reasonable doubt. Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you conclude that it was raining.

22. Are there any of you who, because of religious, philosophical, or any other reason, do not feel you could sit in judgment of these facts and vote to return a verdict of guilty regardless of the proof in this case?

23. Are there any of you who have difficulty hearing, seeing, or sitting for long periods of time?

24. Are there any of you that have events in your life presently that would distract you or divert your attention from the testimony and evidence of this case?

                                             Respectfully submitted,

                                             JOHN E. KUHN, JR.
                                             United States Attorney

                                             s/Joshua Judd_____
                                             Joshua Judd
                                             Assistant U.S. Attorney
                                             717 West Broadway
                                             Louisville, Kentucky 40202
                                             PH: (502) 582-5911

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 21, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following: Patrick Renn, counsel for defendant Hernandez, and William Butler, Jr., counsel for Anguela-Vazquez.

                                           s/Joshua Judd_____
                                           Joshua Judd
                                           Assistant U.S. Attorney