UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.                                                             CRIMINAL ACTION NO. CR 3:16-CR-98-DJH

PABEL ANGUELA-VAZQUEZ
ANDRES TOMAS ALVAREZ HERNANDEZ                                            DEFENDANTS

### SENTENCING MEMORANDUM

*ELECTRONICALLY FILED*

The United States, by counsel, Assistant United States Attorney, Joshua Judd, files its sentencing memorandum for the sentencing currently scheduled for November 6, 2017 at 2:00p.m., in Louisville, Kentucky. The United States Grand Jury issued an indictment on August 17, 2017, charging Wire Fraud and Aggravated Identity Theft for credit card skimming in Louisville, Kentucky. The United States has consulted with counsel for Defendant Andres Tomas Alvarez Hernandez, discussed possible sentencing issues, and estimated the time that may be necessary for sentencing at approximately 2 hours. The United States has been unable to contact counsel for Anguela-Vazquez to discuss sentencing issues and estimate time.

The United States takes the position a sentence of 45 months incarcerate, a low end fine, and payment of restitution is appropriate for Defendant Alvarez Hernandez. Based on the low restitution amounts, the defendant should also be ordered to pay a fine of at least $10,000, the low-end of the range for a fine. The United States takes the position a sentence of 48 months and payment of restitution is appropriate for Defendant Anguela-Vazquez. Based on the low

restitution amounts, the defendant should also be ordered to pay a fine of at least $10,000, the low-end of the range for a fine.

## I. OFFENSE CONDUCT

Defendants Pabel Anguela-Vazquez and Andres Tomas Alvarez Hernandez executed a scheme and artifice to steal debit and credit card numbers at gas stations at various locations using devices placed in gas in pumps known as skimmers. Skimming devices intercept and transfer debit and credit card information from an unsuspecting purchaser of gas at the pump using the credit card reader at the gas pump. Once a card is swiped the skimming device intercepts and transfers credit and debit card information from the transaction to an electronic storage device clandestinely placed inside a gas pump by defendant's like Hernandez and Anguela-Vazquez. As customers purchase gas at the pumps, the skimming device harvests credit and debit card numbers and stores the numbers until the individuals possessing the device return to retrieve it or have others retrieve the devices on their behalf. The skimming devices are installed internally inside the pump and are undetectable unless the inside of the pump is accessed. The skimming devices also do not interfere with the purchase of gas.

Defendants Anguela-Vazquez and Hernandez worked as a team to install and retrieve skimming devices inside gas pumps. In each instance charged, the FBI recovered the skimming devices and used store surveillance video and FBI surveillance video to identify the defendants at the location of the skimming devices. In some instances, Hernandez provided a distraction by standing in front or behind of the door to a vehicle to obscure the view while Anguela-Vazquez accessed the inside of the pump to retrieve the skimming device. In some instances, such as Skimmer B and Skimmer F, Anguela-Vazquez is captured on surveillance video inside a gas pump trying to locate his skimming device that had already been taken by the FBI. Anguela-Vazquez

and Hernandez also used stolen credit card information to make illegal purchases at Kroger and Meijer. The 6 recovered skimming devices collected approximately 201 debit and credit card numbers and names of individuals. By so doing, Hernandez and Anguela-Vazquez committed aggravated identity theft in addition to the wire fraud.

The FBI retrieved the devices. Anguela-Vazquez and Hernandez installed, assisted in the installation, or attempted retrieve the following devices on the following dates:

| | |
|---|---|
| 6/12/2015 to 6/13/2015 | Skimming device A, HWY US 42, Prospect, KY |
| 6/24/2015 to 6/25/2015 | Skimming device B, HWY US 42, Prospect, KY |
| 8/16/2015 to 8/18/2015 | Skimming device C, Wattbourne Lane, Louisville, KY |
| 10/6/2015 to 10/7/2015 | Skimming device D, Shelbyville Road, Louisville, KY |
| 10/6/2015 to 10/7/2015 | Skimming device E, Shelbyville Road, Louisville, KY |
| 4/13/2016 to 4/14/2015 | Skimming device F, HWY US 42, Prospect, KY |

Skimmer A: On June 12, 2015 the FBI recovered Skimmer A from a gas station located on HWY 42. A clerk at the station recovered the device and gave it to the FBI. On June 12, 2015, about 9:30 p.m., surveillance video shows an individual believed to be Pabel Anguela-Vazquez get out of a silver Ford Edge registered to Andres Alvarez Hernandez. The video shows Hernandez providing a distraction while the skimming device is installed. The skimmer was analyzed and had a pin number of 8563 and had approximately 92 credit card numbers and names.

Skimmer B: On June 25, 2015, FBI recovered Skimmer B from a gas station clerk at a gas station on Highway 42. The FBI reviewed the surveillance footage from the store and identified a Black Escalade arrive and defendant Pabel Aguela-Vazquez exit the vehicle and presumably install a credit card skimming device. The video shows Defendant Anguela-Vazquez open pump number 4 at 10:08 p.m. on June 24, 2015. The next day the FBI retrieved the device. On June 28, surveillance video shows Defendant Vazquez opening pump number 4, reach inside

the pump access door, and handle several cables looking for a skimming device that the FBI had already taken. The device had intercepted approximately 46 credit cards numbers and names.

Skimmer C: On August 16, 2015, a White Van used to by Andres Tomas Alvarez Hernandez is seen at the pump with the hood opened at a gas station on Watterbourne Lane. Alvarez is identified wearing orange shorts. Hernandez used the same decoy tactics: opening the hood or standing with the driver's side door as he blocks the view of the station clerks. Two days later, on August 18, 2016, the FBI recovered Skimmer C from a gas station on Wattbourne Lane in Louisville, KY. The device had no names or credit card numbers on it at the time the FBI recovered it.

On or about October 1, 2015, Pabel Anguela-Vazquez used S.W.'s credit/debit card information without authorization to make purchases at Kroger located at 4211 South 3rd Street, Louisville, Kentucky, for $103.76 and $101.16. The victim is First Light Federal Credit Union. These transactions involved 1 card that was used to make two purchases.

Skimmers D and E: On October 6, 2016, a white van pulled up to gas pumps 3 and 4 to install skimming devices in each pump around 9:15 p.m. at a gas station on Shelbyville RD. A white van pulls up to pump 3 on video and seconds later it pulls up to pump 4. During that time, a woman enters the store both times. The FBI subsequently recovered Skimmers D and E from pumps 3 and 4, respectively. On October 8, 2016, surveillance video from the store shows a white van arrive at the same pumps. The video shows Anguela-Vazquez and Hernandez. You can also see a door to pump 3 open. They go to pump 4 and open doors to van to block view. Hernandez stands by the door so as to obstruct the view from inside the store. Hernandez was the passenger. At the time the FBI recovered the devices, skimmer D had 9 credit card numbers and names on it, and skimmer E did not capture any numbers.

On or about October 25, 2015, Andres Tomas Alvarez Hernandez used A.L.'s L&N Federal Credit Union credit/debit card information without authorization to make a purchase of a prepaid MasterCard credit card at Meijer in Jeffersonville, Indiana, for $206.95. Hernandez conducted five credit card transactions using five different credit cards, and purchased five prepaid MasterCard credit cards at Meijer on October 25, 2015. The first transaction was for $260.45 charged to a Chase Bank USA, N.A. credit card. The second transaction was for $249.75 using a PNC Bank, N.A. Visa card. The third transaction was the LN&N card mentioned above. The fourth transaction was for $206.95 on a Fifth Third Bank Debit Card. The fifth transaction was for $206.95 for a Discover Bank Credit Card. These transactions had a total of 5 cards.

Skimmer F: On April 14, 2016, the FBI recovered Skimmer F from a gas station on HWY 42. Store surveillance video from earlier that same day shows Defendants Anguela-Vazquez and Hernandez installing Skimmer F around 8:32 p.m. On April 16, 2016, surveillance video shows both defendants arrive in a white van. Both defendants are easily identified on the video. Anguela-Vazquez can be seen attempting to retrieve the skimming device while Hernandez stands between Anguela-Vazquez and store. Both men enter the vehicle and leave the area. Skimmer F contained 48 card numbers.

The United States concurs with the loss of $100,500 based on 201 access devices in the form of credit card numbers. Each access device constitutes $500 in loss.

## II. GUIDELINES CALCULATIONS

*Andres Tomas Alvarez Hernandez*

The United States agrees with the total Offense level for Counts 1 and 8 should be level 16. The guideline for Count 33 (aggravated identity theft) is 24 month's imprisonment consecutive to the time for the underlying Conspiracy charge.

*Pabel Anguela-Vazquez*

The United States agrees with Probation's Guideline calculation in the initial Presentence Investigation Report. The total Offense level for Counts 1 and 4 is level 16. The guideline for Count 25 (aggravated identity theft) is 24 month's imprisonment consecutive to the time for the underlying Conspiracy charge.

*Sophisticated Means Enhancement*

The United States anticipates from conversations with defense counsel that the defendants may challenge the loss calculation and the enhancement for sophisticated means. The United States will be prepared to present testimony from FBI agents that investigated this case to establish loss and show how this crime involved sophisticated means. The complex methods used by both defendants in this credit card fraud scheme justify the sophisticated means enhancement. The sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C), applies to conduct that is "especially complex or especially intricate." U.S.S.G. § 2B1.1 cmt. 9(B).

The ability to access and install skimming devices in the interior of a gas pump is complex and intricate. Defendant Anguela-Vazquez installed and attempted to retrieve the devices with Defendant Andres Hernandez standing next to him. In some instances, Defendant Hernandez uses distraction tactics by opening the door to the van while his partner attempts to install or retrieve a skimming device. Defendant Alvarez Hernandez is captured on video laundering money in southern Indiana by purchasing gift cards with reencoded cards. The purchase of a gift card with a reencoded card adds an additional layer of concealment to the criminal activity and allows these defendants to use or sell the gift cards for profit. Defendant Anguela-Vazquez is captured in surveillance video using reencoded cards at Kroger in Louisville. Both defendants are at the self-check out lanes to make illegal purchases of gift cards and merchandise. The purpose of using the

self-checkout lanes is to avoid clerk interference. The evidence listed above shows that both defendants have engaged in behavior showing they possess some technical know how and are concerned with evading detection by authorities. <u>United States v. Shifu Lin</u>, 508 F. App'x 398, 403 (6th Cir. 2012) (While it may be true that individual steps in Defendants' conspiracy were not complicated, given the cross-jurisdictional conduct and technical knowledge necessary to commit the offense, the district court did not clearly err in concluding that the conspiracy as a whole reflected the use of sophisticated means). The average person does not know how to access the inside of gas pump, alter the internal wiring setup to install and retrieve a skimming device, remove and take information from a skimming device, reencode usable cloned credit cards, and engage in money laundering transactions in other legal jurisdictions. Looking at the defendants' behavior cumulatively, this Court should apply the sophisticated means enhancement.

### III.  <u>CRIMINAL HISTORY</u>

*Andres Tomas Alvarez Hernandez*

The United States does not object to the criminal history calculation in the initial Presentence Investigation Report. Defendant has a criminal history score of 1 and a Criminal History Category of I.

*Pabel Anguela-Vazquez*

The United States does not object to the criminal history calculation in the initial Presentence Investigation Report. Defendant has a criminal history score of two and a Criminal History Category of II.

### IV.  <u>SENTENCING FACTORS</u>

*Andres Tomas Alvarez Hernandez*

self-checkout lanes is to avoid clerk interference. The evidence listed above shows that both defendants have engaged in behavior showing they possess some technical know how and are concerned with evading detection by authorities. <u>United States v. Shifu Lin</u>, 508 F. App'x 398, 403 (6th Cir. 2012) (While it may be true that individual steps in Defendants' conspiracy were not complicated, given the cross-jurisdictional conduct and technical knowledge necessary to commit the offense, the district court did not clearly err in concluding that the conspiracy as a whole reflected the use of sophisticated means). The average person does not know how to access the inside of gas pump, alter the internal wiring setup to install and retrieve a skimming device, remove and take information from a skimming device, reencode usable cloned credit cards, and engage in money laundering transactions in other legal jurisdictions. Looking at the defendants' behavior cumulatively, this Court should apply the sophisticated means enhancement.

### III.  <u>CRIMINAL HISTORY</u>

*Andres Tomas Alvarez Hernandez*

The United States does not object to the criminal history calculation in the initial Presentence Investigation Report. Defendant has a criminal history score of 1 and a Criminal History Category of I.

*Pabel Anguela-Vazquez*

The United States does not object to the criminal history calculation in the initial Presentence Investigation Report. Defendant has a criminal history score of two and a Criminal History Category of II.

### IV.  <u>SENTENCING FACTORS</u>

*Andres Tomas Alvarez Hernandez*

The total offense level is 16 for Counts 1 and 8. The Criminal History Category is I. The sentencing range pursuant to the Guidelines would be 21-27 months. Count 33 requires that 24 months must run consecutive to the Guidelines calculations for Counts 1 and 8. The United States takes the position a sentence of 45 months and payment of restitution is appropriate for Defendant Alvarez Hernandez. Based on the low restitution amounts, the defendant should also be ordered to pay a fine of at least $10,000, the low-end of the range for a fine.

### *Pabel Anguela-Vazquez*

The total offense level is 16 for Counts 1 and 2. The Criminal History Category is II. The sentencing range pursuant to the Guidelines would be 24-33 months. Count 25 requires that 24 months must run consecutive to the Guidelines calculations for Counts 1 and 4. The United States takes the position a sentence of 48 months and payment of restitution is appropriate. Based on the low restitution amounts, the defendant should also be ordered to pay a fine of at least $10,000, the low-end of the range for a fine.

### *The Sentencing Factors for both defendants*

Since both defendants participated in the same conspiracy and same conduct, the United States will address the sentencing factors for both defendants in a combined manner. This Court must ultimately affix a sentence which is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). Title 18, United States Code, Section 3553(a) guides the Court regarding factors to consider when imposing a sentence. That section directs courts to consider the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed:
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B)    to afford adequate deterrence to criminal conduct;

      (C)    to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for--

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines

      . . .

(5)    any pertinent policy statement--

      . . .

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

Defendants stand convicted of Conspiracy to Commit Mail and Bank Fraud, Wire Fraud, and Aggravated Identity Theft. The sentence imposed in this action should adequately reflect the seriousness of the offense and the characteristics of the defendant, promote respect for the law, and provide just punishment for the offense. For the reasons that follow, the United States respectfully requests that the Court impose a sentence of 45 months for Defendant Alvarez Hernandez and 48 months for Defendant Anguela-Vazquez, order fines, and order restitution, which is sufficient, but not more than necessary to satisfy these factors.

**A. The nature and circumstances of the offense and the history and characteristics of the defendant.**

The history and characteristics of both Defendants combined with the nature of the offense justify the requested sentences. Both Defendants engaged in a string of fraudulent behavior for their own financial enrichment. Their crimes were not one-off offenses, but involved making repeated fraud at a variety of gas stations located throughout the Louisville, Kentucky area.

B. **The need for the sentence imposed to reflect the seriousness of the offense, to provide adequate deterrence, and to provide just punishment for the offense**.

Given the surrounding circumstances, the requested sentences, fines, and a restitution order properly reflect the seriousness of the offense and provide just punishment. This crime affects more than just banks who generally bear its financial losses. The crime affects the user of the credit card who has to take time to report the crime and make a police report. It takes time to contact the bank and credit card company to report it lost or stolen. The crime also affects the public trust in the ability to engage in normal activities such as purchasing gas at the pump using a credit card. It affects the gas stations, who constantly must monitor for this type of behavior with expensive surveillance equipment and by engaging in expensive repair and replacement of tampered gas pump equipment. It affects the gas station's ability to attract customers who are worried that their stations have skimming devices secreted in their gas pumps. If confidence in the use of credit cards is seriously impacted, the success of the narrow financial margins of gas stations would not doubt be negatively impacted.

It should be noted that the loss amount here is conservative because the defendants are only be held accountable for the times where they were linked to a particular skimming device or caught using reencoded credit cards. There is no doubt that the defendants had to have been successful many more times than government knows.

Gas station skimming is a serious and growing crime that affects millions of people every day. An article posted to CreditCards.com[1] provided the following statistics:

•37 million Americans refuel every day.

---

[1] https://www.creditcards.com/credit-card-news/gas-station-skimmer-fraud.php

- Of them, 29 million pay for fuel with a credit or debit card.
- When skimming occurs at a gas station, it usually takes place at only one pump.
- A single compromised pump can capture data from 30 to 100 cards per day.

One purpose of sentencing is to deter the defendants individually and to deter individuals like the defendant who are contemplating engaging in skimming and credit card fraud by ensuring that they will receive appropriate punishment for their offensive criminal behavior. The sentences listed above will accomplish these goals.

## V. CONCLUSION

For the reasons set forth herein, the United States respectfully requests that the Court apply the Sentencing Guidelines, follow the statutory directives set out in 18 U.S.C. § 3553(a), and follow the government's recommendation, by imposing a sentences 45 months, a $10,000 fine, and payment of restitution is appropriate for Defendant Alvarez Hernandez, and a sentence of 48 months, a $10,000, and payment of restitution is appropriate for Defendant Anguela-Vazquez.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney


 s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney
717 West Broadway
Louisville, Kentucky  40202
PH:  (502) 582-5911

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Patrick Renn, counsel for defendant Hernandez, and William Butler, Jr., counsel for Anguela-Vazquez.

 s/Joshua Judd_____
Joshua Judd
Assistant U.S. Attorney